# SARAH ANN FARRELL
## v.
# NICHOLAS PATTERSON.

1. APPEALS — *allowed to the plaintiff to one of several executions on a joint trial of the right of property.* A sheriff, having two executions, one in favor of E. & Co., the other in favor of P., against F., levied them both on the same goods, as the property of F. The property was claimed by the wife of F., as against both executions. A trial of the right of property was had before a sheriff's jury, both causes being tried together; a verdict was rendered in favor of the claimant. Both execution creditors appealed to the Circuit Court. E. & Co. failed to file appeal bond. P. filed his bond. The case was docketed by the clerk as *Sarah A. F.* v. *E. & Co.* On motion, the appeal as to E. & Co. was dismissed. P. was allowed to docket his appeal and prosecute it separately. To this the claimant objected. *Held,* that, although the trial before the sheriff's jury was carried on as one suit, P. was an independent party to that suit, and his rights were in no degree mixed up with those of E. & Co.; and he could take an appeal to the Circuit Court without regard to the action of E. & Co. in the matter.

2. SAME. Where a sheriff levies upon the same property by virtue of two executions in favor of two distinct parties, against the same defendant, and the property is claimed by a third party, as against both executions, and a joint trial of the right of property is had before a sheriff's jury, and a verdict rendered in favor of the claimant, the plaintiff to either execution has a separate and independent right to an appeal to the Circuit Court, without reference to the action of the other.

3. WILL — *when admitted in evidence.* If a will is not properly authenticated, it is not admissible for any purpose as evidence in a case.

4. MARRIED WOMEN — *their rights under the act of 1861.* There are three classes of property mentioned in the act of 1861, in relation to the rights of married women, to be affected by its provisions, viz.: First, the property belonging to any married woman as her sole and separate property at the

time when the law was passed or took effect; second, the property of women thereafter to be married; and, third, the property thereafter to be acquired by married women. This act was designed to clothe married women, for the future, that is, from and after the time it took effect, with the exclusive title to, and dominion over their own property; and as one incident thereto, to protect it from execution or attachment for the debts of her husband.

5. Where a woman was married, and received large sums of money, prior to the passage of the act of 1861, the money, by force of well known and long established principles of law governing marital relations, became the property of her husband; and any chattels purchased with it became his likewise.

. 6. The statute of 1861, never was designed to take from the husband that which belonged to him as a consequence of the marriage. The act is prospective only, and was not designed to change, and could not change, the title to property possessed by the wife prior to its passage, and which by her marriage vested in her husband.

7. SAME — *burden of proof where wife claims property.* The presumption of law is that the husband is the owner of all the property of which the wife may be in possession, especially if they are living together as husband and wife. To overcome this presumption, she must show affirmatively, the property is her own, and derived from a source other than her husband, and in good faith.

8. SAME — *the earnings of married women.* The earnings of a married woman are not vested in her by the act of 1861. They belong to her husband, as well as the property purchased by them.

APPEAL from the Circuit Court of Perry county; the Hon. W. H. GREEN, Judge, presiding.

This was a case of the trial of the right of property before the sheriff of Perry county. The property was levied upon by the sheriff, by virtue of two executions against Joseph Farrell, the husband of the claimant — one execution was in favor of W. F. Enders & Co., the other in favor of Nicholas Patterson. The executions were both levied upon the same property.

The claimant gave notice under the statute to try the right of property as against both executions. The question, as against both executions, was tried in one proceeding.

The sheriff's jury found a verdict in favor of the claimant.

The plaintiffs to both executions appealed to the Circuit Court. Patterson filed his appeal bond as required by law. W. F. Enders & Co. neglected to file a bond.

When the papers were received by the circuit clerk, he docketed the case " Sarah Ann Farrell v. W. Enders & Co."

The court, on motion, dismissed the appeal of Enders & Co. Thereupon Patterson asked and obtained leave to docket his appeal, and obtained a rule on the sheriff to file a transcript of the proceedings before him, in Patterson's case.

On the trial in the Circuit Court, the claimant introduced evidence that she was married to Joseph Farrell in the year 1849; her maiden name being Sarah Ann Sappington; after her marriage her father gave her some means; he also gave her $500 by his will; she had two negroes, a man and a girl, which were sold by her husband for her, he getting therefor $1,300. The negroes were sold in the year 1858 or 1859. She also had some household furniture which she received from her father.

Evidence was introduced, that they came to Illinois from the State of Missouri in the year 1859, and have ever since been keeping a hotel at Tamaroa, the entire business being carried on in her name. The will of Mrs. Farrell's father was offered in evidence, and rejected because it did not appear to be properly authenticated.

Witnesses testified, that the property levied on was purchased by claimant in her own name from parties other than her husband.

The jury in the Circuit Court rendered a verdict adverse to the claimant. A motion for a new trial was overruled, and exceptions taken. The claimant then moved for an arrest of judgment, which was also overruled, and judgment entered upon the verdict. The case is brought to this court by appeal.

Messrs. EDWARD V. PIERCE & JOHN DOUGHERTY, for the appellant.

Mr. GEORGE W. WALL, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This record presents a case of the trial of the right of property in certain goods and chattels levied on by the sheriff of

Perry county, by virtue of two executions in his hands issued out of the Circuit Court of that county, the one in favor of William F. Enders & Co., and the other in favor of Nicholas Patterson, and both against Joseph Farrell. The claimant of the property, as against both executions, was Sarah Ann Farrell, the wife of Joseph Farrell, the execution debtor. The sheriff's jury found the property to be in the claimant, Sarah Ann Farrell. An appeal was prayed for by both the execution creditors to the Circuit Court. Patterson filed the appeal bond required by the statute. Enders & Co. failed to file a bond. The papers coming into the Circuit Court by this appeal, the clerk docketed the cause " Sarah Ann Farrell, against W. F. Enders & Co." · On motion of the claimant, the appellant here, the court dismissed the appeal of Enders & Co., and thereupon, Patterson asked and obtained leave to docket his appeal, which being done, a rule was obtained against the sheriff requiring him to file the transcript of the proceedings before him on the trial of the right of property as against Patterson's execution.

To this appellant objected, insisting, that, inasmuch as Enders & Co. had failed to file an appeal bond, Patterson's appeal should be dismissed, as he was a party to the trial of the right of property and but one appeal could be taken, and as one was taken by Enders & Co. and not completed by filing a bond, Patterson's appeal must also be dismissed. To be more particular, the reasons assigned for dismissing the appeal were : first, because the sheriff had two executions against Joseph Farrell, one in favor of Enders & Co. and the other in favor of Patterson, and he levied both executions on the same property which was claimed by Sarah Ann Farrell, and the trial of the right of property before him was for the property claimed by the said Sarah Ann Farrell which was levied on by virtue of both the executions, and was tried together; second, because Enders & Co. did not join in the appeal; third, because all the parties interested, and who appeared before the sheriff upon the trial of the right of property, did not join in the appeal; fourth, because this is another and different cause from that tried by

the sheriff's jury; fifth, because it is too late now, for the first time, to separate the trial on said executions, and make out of said trial before the sheriff, two cases, one, *Sarah Ann Farrell* v. *W. F. Enders & Co.*, and the other, *Sarah Ann Farrell* v. *Nicholas Patterson.*

These reasons failed to influence the Circuit Court, and we think properly, and the motion to dismiss Patterson's appeal was denied.

Patterson was not in the same boat with Enders & Co., nor did his fate depend on that of the latter. If, for convenience, the trial before the sheriff's jury was carried on, as one suit, still Patterson was an independent party to that suit, and his rights in no degree mixed up with those of Enders & Co. His case was his own, which he could take by appeal to the Circuit Court without any regard to the action of Enders & Co. in the matter. Under the circumstances of this case, each execution creditor, should there be a score of them, would have an independent right of appeal. Neither one could be prejudiced by the act of another.

An exception was also taken to the rejection of the will of L. Sappington, as an instrument of evidence. It is admitted by appellant's counsel, that the will was not properly authenticated, consequently it was not admissible for any purpose as evidence in the cause.

Upon the point that the court refused to admit evidence of the dismissal of the appeal we have only to say, we are at a loss to perceive wherein such evidence was pertinent. The fact that Enders' appeal had been dismissed had nothing to do with Patterson's case, and therefore the court properly ruled it out.

Disposing of these preliminary questions, the one remaining arises out of the construction to be given to the act of 1861, to protect married women in their separate property, in force, April 24, 1861.

We have before considered this act, and put a construction upon it, so far as the right of a married woman to sue in her own name for her separate property was involved, in *Emerson*

v. *Clayton*, 32 Ill. 493, and so far as her earnings were involved, in the case of *Bear* v. *Hays*, 36 id. 280.

It is insisted by appellant's counsel that there are four distinct classes of property mentioned in that act to be affected by its provisions, — first, all the property, both real and personal, belonging to any married woman, as her sole and separate property, at the time of the passage of the act; second, all the property which any woman who may marry after the passage of the act owns at the time of her marriage; third, all the property which any married woman during her coverture acquires in good faith from any person other than her husband, by descent, devise or otherwise, together, fourth, with all the rents, issues, increase and profits of the three before mentioned kinds of property, and that the same remains, notwithstanding her marriage, during her coverture, her sole and separate property, under her sole control, and to be held, owned, possessed and enjoyed by her as though she was sole and unmarried, and not subject to the disposal, control or interference of her husband, and is exempt from execution or attachment for the debts of her husband.

This classification does not differ much from that made by this court in the case of *Rose et al.* v. *Sanderson*, 38 Ill. 247. In that case it was the opinion of this court that but three classes of cases were provided for by that act, viz.: First, for property belonging to any married woman as her sole and separate property at the time when the law was passed or took effect; second, for the property of women thereafter to be married; and third, for property thereafter to be acquired by married women. We said in that case that this act designed to clothe married women for the future, that is from and after the time it took effect, with the exclusive title to and dominion over their own property, and, as an incident thereto, to protect it from execution or attachment for the debts of the husband.

We are at a loss to perceive under which of these three classes the claim of the appellant, so urgently pressed by her counsel, can be arranged, since, by the proofs in the cause, she was married in 1848 or 1849, many years prior to the passage

of the act of 1861, and the large sums of money testified to by her relatives, the Sappingtons, came to her years before the enactment of the law in question. These moneys, then, by force of well known and long established principles of law governing marital relations, became the property of the hus-band, and the chattels purchased with it became his likewise. The statute of 1861 never was designed to take from the hus-band that which belonged to him as a consequence of the mar-riage, nor could it do so without violating those principles of right and justice no legislature has ever, knowingly and of pur-pose, disregarded and ignored. All the well recognized pre-sumptions arising from the marital relation with respect to the title to property of the wife still remain, notwithstanding this statute. The act is prospective only, and was not designed to change, and could not change, the title to property possessed by the wife prior to its passage, and which, by her marriage, vested in her husband. All the instructions of the court, therefore, on this branch of the case, were substantially correct. The first instruction given for appellee is said, by counsel for appellant, to impose a burden upon *femes covert* unknown to the law. That instruction is as follows :

" The court instructs the jury, that, although they may believe, from the evidence, that the property in question was purchased in the name of Sarah Ann Farrell, yet, if she has failed to prove and show affirmatively that the money or consideration paid for said property belonged to her in her own right, and that she acquired the same through some other source than through her husband, she cannot recover, and you must find against her."

Counsel insist, if this be the rule, a *feme covert* would be under the necessity of placing some mark upon all her money at the time she obtained it, by the person of whom she got it, and then keep such person near her, so that, if the property purchased by her should be levied upon by her husband's cred-itors, or taken from her by any person wrongfully, she could prove the identical property was purchased by her with the

identical pieces of money so marked and known, for otherwise she could not recover or protect her property, however just her claim. No such hardship is perceived as likely to result from the principle announced in the instruction. It is but the repetition of an old and quite familiar principle, that he who asserts an affirmative right must establish it by proof; the *onus* is upon him. So with a married woman, if she asserts that she bought property and paid for it with her own money received in good faith through a source other than her husband, she must prove it, not by proving she paid out the identical money she had thus received, but that she had received money equal to the price of the property which she paid, and from whom she received it, or that the property was a gift to her by a donor not her husband, nor the gift procured by the expenditure of his money. Counsel insist, that good faith is always presumed in the purchase and conveyance of property until it is shown to be otherwise, but that this instruction puts a badge of fraud upon any act of purchase of property by a *feme covert*, without any proof of bad faith or fraud, and therefore cannot be the law.

We do not so regard the instruction. As we have said, it is but the recognition of the familiar principle, that he who affirms a fact must furnish proof of the fact. Nor do we understand, that the act of 1861 was designed to overthrow the presumption of the common law, that the husband is the owner of all the property of which the wife may be in possession, especially if they are living together as husband and wife. To overcome this presumption, she must show affirmatively, the property is her own, and derived from a source other than her husband, and in good faith. The substance of the instructions embody those principles, and are the law.

But, it is insisted, that the earnings of appellant, as an hotel-keeper since the act of 1861, belong to her.

The act does not vest the earnings of the wife in her, as this court decided in the case of *Bear* v. *Hays, supra.* They belong to her husband, and the property purchased by them is his also.

Upon the merits of the case, as developed by the testimony, we think the verdict was right. The jury had the sagacity to perceive, that though ostensibly the appellant was the purchaser of the property levied on, yet really, the money which paid for it came from the husband, and the forms of sale and payment to which resort was had, were mere contrivances, easily penetrated, by which to veil the transactions.

Believing the instructions to be correct, and that the evidence supports the verdict, we must affirm the judgment.

*Judgment affirmed.*