| | |
|---|---|
| 49 | 49 |
| 22a | 446 |
| 22a | 447 |
| 22a | 450 |
| 49 | 49 |
| 174 | 71 |

## SIDNEY DUBOIS

### *v.*

## ANN ELLEN JACKSON.

1.  MARRIED WOMEN—*rights of under the act of* 1861. Where parties residing in England were married there, and the wife, at the time of such marriage, was the owner of certain personal property, such marriage operated as an absolute gift of it to the husband, and the subsequent removal by the parties to this State, after the passage of the Act of 1861, worked no change in the title to such property, which by the marriage had vested in the husband.

2.  The statute was never designed to take from the husband rights which had vested in him prior to its passage, or to take from him such as had been acquired in another State, subsequent to its passage.

APPEAL from the Circuit Court of Kankakee county; the Hon. CHARLES H. WOOD, Judge, presiding.

7—49TH ILL.

The opinion states the case.

Mr. WILLIAM PORTER, for the appellant.

Mr. MASON B. LOOMIS, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of replevin, with a count in trover, brought to the Kankakee Circuit Court, by Ann Ellen Jackson against Sidney Dubois, for a piano, and a verdict and judgment for plaintiff, to reverse which, the defendant appealed to this court.

It appears, the piano in question was the property of the plaintiff at the time of her marriage with William Jackson, in England, in 1865, they both being then residents of that kingdom. On their immigration to this country, they brought the piano with them, and, as the facts tend strongly to show, it was sold by the husband to the defendant, and full payment therefor made by him, on delivery.

His wife brings this action, claiming the property as her own.

On the trial, the defendant asked the court to instruct the jury, if they believed from the evidence that the plaintiff was the wife of William Jackson, and that they formerly lived and resided in England, that previous to their marriage, and while they so resided in England, the plaintiff was the owner and possessed of the property in question, and that she was there married to William Jackson, then, and in that case, the title to the property in question was, by law, vested in her husband, and their subsequent removal to this State did not alter or change the title to the property, and the plaintiff cannot maintain this action.

This instruction the court refused to give, and an exception was taken. The case turns on this instruction, and we are at

a loss to perceive the grounds on which it was refused, unless they be found in the seventh instruction given for the plaintiff, to which exception was taken, which is as follows:

"The court instructs the jury, that under an act of the legislature of this State, passed in the year 1861, all the property, both real and personal, which any woman, married after the passage of that act, owns at the time of her marriage, by descent, devise or purchase, from any person other than her husband, together with all the rents, issues and profits thereof, does, notwithstanding her marriage, remain sole and separate property, under her sole control, to be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried, and is not subject to the disposal, control, or interference of her husband; and that under and by virtue of the provisions of said act, a married woman may bring a suit in her own name, without joining the name of her husband with her in such suit, for the recovery of her sole and separate property, and in this case, if you find, from the evidence, that the plaintiff was married to her present husband in the year 1865, and that she owned the piano in question at the time of said marriage, and if you further find, from the evidence, that she never in any way authorized her said husband to sell said piano, or ratified such sale, she has a right to recover in this action."

By the common law of England, where these parties were domiciled at the time of their marriage, the wife being then the owner of this property, the marriage was an absolute gift of it to the husband, and all the estate in it, of which the wife was actually and beneficially possessed at the time of the marriage, in her own right; and of such other goods and chattels as might come to her during the marriage. Coke on Litt. 305 *a*, 351 *b*.; 2 Bl. Com. 235.

And such was the law of this State prior to the Act of 1861. It cannot be conceived, that this act was designed to take from husbands rights which had vested in them prior to its passage, or to take from them such as had been acquired in another State, subsequent to its passage.

In 1865, in England, the right of the husband to this property was absolute, and he did not forfeit it, by his removal to this State. This is a proposition too plain for argument, being so fully supported by authority. Thus Story: a marriage contracted by citizens of Massachusetts, is a gift in law to the husband of all the personal, tangible property of the wife, and operates as a transfer of it to him, wherever it may be situate, at home or abroad; and the rights thus acquired by the law of the matrimonial domicil, will be held of perfect force and validity in every other country, notwithstanding the like rule would not arise in regard to domestic marriages by its own municipal code. Conflict of Laws, § 423. As Lord MEADOWBANK said, " The legal assignment of a marriage operates without regard to territory, all the world over. *Royal Bank of Scotland* v. *Cathbut*, 1 Rose's Cases in Bankruptcy, 481.

On the same principle is it, that a sale of chattels made in the country where the chattels are, and valid by its law, is valid everywhere. *Carneal* v. *Sewell*, 5 Hurlston & Norman, 728; *Langworthy* v. *Little*, 12 Cush. 109.

The proposition contained in the plaintiff's seventh instruction, in view of the authorities, is so indefensible that time need not be expended in discussing it. It is idle to contend that a law passed by the legislature of this state could affect rights acquired in England. This court, in the case of *Farrell* v. *Patterson*, 43 Ill. 52, said, where a woman was married, and received large sums of money prior to the passage of the act of 1861, such moneys became the property of the husband, and any chattels purchased with them since the act of 1861, became his also. That the act was not designed to take

from the husband that which belonged to him in consequence of the marriage.

The court should have given defendant's tenth instruction, and refused plaintiff's seventh instruction, and all others of like character.

For the error noticed, the judgment is reversed and the cause remanded.

*Judgment reversed.*