## SETH F. HANCHETT

### v.

### AMELIA RICE.

*Husband and Wife—Property of Wife—Acts of 1861, 1869 and 1874— Presumptions—Common Law in other States.*

1.   Under the common law the money and personal property of the wife, other than choses in action, became the absolute property of the husband, her possession being his possession.

2.   The Act of 1861 is prospective only. It did not change the husband's title to property of the wife, which had vested in him by marriage prior to its passage, nor did it affect his right to property subsequently purchased by her with property which had so vested in him.

3.   Married women did not become entitled to their own earnings in this State until the passage of the Act of 1869.

4.´   The husband is still regarded as the head of the family, and the household furniture in possession of the family is presumed to be his until the contrary is shown. Neither the Act of 1861 nor that of 1874 was designed to overcome this presumption nor to take from the husband rights previously acquired, or subsequently acquired in another State.

5.   In the absence of evidence to the contrary, it will be presumed in the courts of this State that the common law prevails in other States formed from the territory which once belonged to the colonies of England.

[Opinion filed April 26, 1887.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Statement by MORAN, J.   This was an action of replevin to recover possession of certain household furniture which had been taken by the Sheriff on a writ of attachment against one Isaac A. Rice, the husband of appellee, and which appellee claimed was her separate property purchased with her own money. It appeared from her evidence that she was married in Baltimore, Maryland, in 1854, and at once went to live with her husband in Richmond, Virginia. On the day of her marriage she received $1,000 from her parents, which she never gave to her husband, but which she

invested in part in personal property in Richmond, and again disposing of the property, brought the money back to Baltimore where she lived with her husband some three years. During her residence in Baltimore she purchased a slave and sold him again, making some money by the transaction, and in 1859 or 1860 she came with her husband to this State and settled in Jacksonville. After a time the family removed to Winona, Illinois, where her husband conducted a business for some years. During the sojourn at Jacksonville and Winona she purchased real estate in her own name and sold it again, making a profit, and also purchased and sold county bonds. About 1867 or 1868 she moved with her husband to Hobart, Indiana, where they resided for a year, and she took the money with her to that place and kept it in her own possession until they came to this State again, and still retained the money in her possession, when the family went to Beloit, Wisconsin, where they lived for some time. While there she purchased some real estate and sold it again, making a profit, and then returned to this State, and to the City of Chicago, to live. While she was living in Winona with her husband, his brother was in partnership with her husband in the clothing business and the brother having gone into the army in 1861–2 employed her to take his place in the store and paid her $50 a month for her services until he returned from the war in 1865 or 1866. This money as well as the money that was given her at her marriage by her parents, she always kept in her own possession and control, and when she purchased property she did the business herself and in her own name, and her husband never at any time had possession of the money or claimed it as his, but left her to manage it as she liked. When she came to Chicago to live she had some $4,000 or $5,000 which was the money given her by her parents at the time of her marriage, and the money given her by her brother for services rendered while she was living with her husband in this State, between 1861 and 1866, and the increase of such money made by her investments and speculations. The furniture in controversy was purchased by her and paid for out of this fund, and was, at the time of the levy, in the

house in which she resided with her husband and family. Upon these facts the appellant offering no evidence, the court instructed the jury to find a verdict in favor of appellee, to which instruction appellant duly excepted. There was a verdict for the appellee, a motion for a new trial which was overruled, and judgment; and the case comes to this court by appeal.

Messrs. Moses, Newman & Reed, for appellant.

In 1854 the common-law rules prevailed in this State regarding the *jus matrimonii*.

The common law is presumed to have prevailed in Maryland and Virginia where appellee married and lived, prior to 1859, when they came to Illinois.

The same rule still prevailed in 1859 and 1860, when they took up their abode in Illinois.

The $1,000 in money became the property of her husband upon the marriage, and remained so through the various mutations.

Upon their coming to this State the same rule of law prevailed and governed their property, which was money.

The " married woman's law " did not take effect until 1861.

The following authorities bear upon the questions at issue : Haralson v. Bridges, 14 Ill. 37; Emerson v. Clayton, 32 Ill. 493; Farrell v. Patterson, 43 Ill. 52; Dubois v. Jackson, 49 Ill. 49; Hall v. Sroufe, 52 Ill. 421; Bridgford v. Riddell, 55 Ill. 261; Thomas v. City of Chicago, 55 Ill. 403; Adlard v. Adlard, 65 Ill. 212; Jassoy v. Delius, 65 Ill. 469; Tinkler v. Cox, 68 Ill. 119; Kahn v. Wood, 82 Ill. 219.

Messrs. Sawin & Vanderploeg, for appellee.

In order to make the wife's choses in action the property of the husband, he must exercise some act of ownership over or control them with the intention of reducing them to his possession, and until they belong to the wife. Schouler's Domestic Relations, 114–116.

If the husband had not reduced the husband's choses in action into possession before the Married Woman's Act of

1861 took effect, he can not do so afterward, and they became hers absolutely.    Martin v. Robson, 65 Ill. 129;  Emmert v. Hays, 89 Ill. 11.

Income to chose in action is as much a chose as the principal itself.    Schouler's Dom. Relations, 115.

If, after the Act of 1861 took effect, the wife purchased real or personal property in her own name with money she received from a third party other than her husband, or with money which she claims as her own and which her husband treated and recognized as such, then the property so bought or obtained and the proceeds thereof, belong to the wife, and in the law is considered as her separate estate, free from the debts of her husband.    Dyer v. Keefer, 51 Ill. 525;  Pike v. Baker, 53 Ill. 163; Wing v. Goodman, 75 Ill. 159; Emmert v. Hays, 89 Ill. 11.

Where a woman, prior to 1861 and at the time of her marriage, was possessed of certain money which came from her parents, and after the marriage this money and the proceeds thereof, was recognized and treated by the husband as the property of the wife, it will be so considered.    Wing v. Goodman, 75 Ill. 159.

Even though prior to 1861 the husband legally owned or was entitled to money or choses in action claimed by the wife, and admitted and treated by him as his, still, if since the Act of 1861 took effect, the husband allowed his wife, either as his agent or otherwise, to invest such money, property or proceeds in real or personal estate, in her own name and for her own use and account, and the husband acquiesced in and ratified such investments and purchase, then such property would legally be considered as her sole and separate estate, free from the debts of her husband.    Cowel v. Varnum, 37 Ill. 181; Haines v. Haines, 54 Ill. 74;  Pike v. Baker, 53 Ill. 163; Wing v. Goodman, 75 Ill. 159;  I., B. & W. Ry. Co. v. McLaughlin, 77 Ill. 275.

The earnings of a married woman since 1861 and before the Act of 1869, as belonging to her husband, does not include the proceeds or increase of her separate estate.    Bongard v. Core, 82 Ill. 19.

The husband may, unless he injure his creditors thereby, have property purchased with his money, conveyed directly to the wife, and thereupon it will become her sole and separate estate free from his debts, and insolvency on the part of the husband at such time will not be presumed, but must be proved. Sweeney v. Damron, 47 Ill. 450; McLaurie v. Partlow, 53 Ill. 340; Bettinger v. Kasten, 111 Ill. 260.

MORAN, J.   The question presented by this record is whether the appellee established, by the evidence introduced, a title in the furniture replevied, which entitled her to recover it in an action at law against the creditor of her husband, who had levied upon it.   By the common law the money and personal property of the wife, of which she was actually and beneficially possessed at the time of the marriage in her own right, and such goods and chattels as might come to her during marriage, became the absolute property of her husband, and the tangible property was transferred to him by operation of the law wherever it might be situated.   For this purpose the possession of the wife was the possession of the husband, "as for example, if she has money in her pocket, and this money never comes within his personal control, still being under her control, it is therefore in law his money and not hers, and the principle applies to all other chattels."   Bishop on the Law of Married Women, Sec. 64, and cases cited.

Such was the law of this State prior to the passage of the Act of 1861, and that act was not designed to take from the husband that which belonged to him at the time of its passage. Dubois v. Jackson, 49 Ill. 49; Cummings v. Cummings, (Mass.) N. E. Rep. 226.

When the appellee came into this State and lived with her husband prior to the passage of the Married Woman's Act of 1861, the money which she had in possession was the money of her husband, and at law and so far at least as the rights of his creditors were concerned, it continued to be his after the passage of that act, and all property that she purchased with it was his, and throughout all the changes and speculations and purchases and sales, the money, as well as the increase thereof,

was his.    Farrell v. Patterson, 43 Ill. 52, is conclusive of this case upon this point.    There, Sarah Ann Farrell claimed certain property which was levied upon by the Sheriff under execution against her husband, and a proceeding was had under the statute to try the right of property.    There was an appeal from the verdict of the Sheriff's jury and on the trial in the Circuit Court, the claimant introduced evidence that she married in 1849; that after her marriage her father gave her some means and also gave her $500 by his will; that she had two negroes which were sold for $1,300 and also had some household furniture which she had received from her father; that she came with her husband to this State in 1859, and from that time had been keeping hotel, the entire business being carried on in her name.    The property levied upon was purchased by her in her own name.    The court, after alluding to the fact that the moneys which she claimed came from a source other than her husband came to her from her relations prior to the law of 1861, said:  " These moneys then, by force of well known and well established principles of law governing marital relations, became the property of her husband, and the chattels purchased with it became his likewise.    The statute of 1861 was never designed to take from the husband that which belonged to him as a consequence of the marriage, nor could it do so without violating those principles of right and justice no Legislature ever knowingly and of purpose disregarded and ignored.    All the well recognized presumptions arising from the marital relation with respect to the title to property of the wife still remain notwithstanding this statute.    The act is prospective only, and is not designed to change and could not change the title to property possessed by the wife prior to its passage and which by the marriage vested in her husband."

The same rule was applied in Dubois v. Jackson, *supra,* and we know of no case and have been referred to none, where it has been qualified, modified or questioned.

So with reference to the money paid to appellee by her brother for services prior to 1866; that also became her husband's, and whatever chattels she purchased with it would be subject to the rights of his creditors. ·

It was not until the passage of the Act of 1869 that married women became entitled to their own earnings in this State. Hay v. Hayes, 56 Ill. 342; Jassoy v. Delius, 65 Ill. 469.

The fact that appellee went from this State to Indiana and also to Wisconsin, and resided in each of those States for a time with her husband, and there had the money in her possession and dealt with it, does not in any manner strengthen her position, but in fact rather makes against it under the evidence in this record. It is a presumption always indulged in by the courts that the common law prevails in such of the States of the Union as are formed from territory which once belonged to the colonies of England. Unless the contrary is proven as a fact to the court it will be presumed in this State that the common law prevails in Indiana and Wisconsin, as regards the marital rights of the husband. So when appellee proved that she resided in Indiana with her husband and had the money in her possession there, and that she also resided in Wisconsin and had this money there, and afterward came with it into this State, the presumption of law in. the absence of proof that by statute a married woman could hold her own personal property in that State is, that the common law prevailed there, and that by virtue of that law the money there became her husband's and therefore remained her husband's when she came into this State with it, and so the furniture purchased with it was subject to the levy by his creditors. This principle has been declared and applied by the Supreme Court in the case of Tinkler v. Cox, 68 Ill. 119. There the plaintiff, a married woman, purchased a horse with her own means in the State of Indiana, in 1867, and removed with her husband to this State, bringing the horse with them. The husband, in 1872, mortgaged the horse and placed him in the possession of the mortgagee, and the wife brought replevin, claiming him as her separate property. The court said: " The proof is, Mrs. Cox purchased the horse in the State of Indiana, but it is not proved as it might have been, if the law was established in that State, that by the laws of that State property so purchased became the separate property of the wife, free from the control of her husband. In the absence

of such proof we must presume that the common law was in force in 1867, at the time Mrs. Cox purchased the horse, and so presuming, by that law the title of the property became vested absolutely in her husband; being so vested in the husband, by no act of our Legislature could his title be divested." See, also, Savage v. O'Neil, 44 N. Y. 298; Lichtenburger v. Graham, 50 Ind. 288. The Married Woman's Act of 1861 was repealed by the general repealing act adopted in 1874, and appellee's rights were controlled at the time of the trial by the act to revise the law in relation to husband and wife, in force July 1, 1874. Section 9 of said act is as follows: "A married woman may own in her own right, real and personal property obtained by descent, gift or purchase, and manage, sell and convey the same to the same extent and in the same manner that the husband can property belonging to him: *provided*, that where husband and wife shall be living together, no transfer or conveyance of goods and chattels between such husband and wife shall be valid as against the rights and interests of any third person, unless such transfer or conveyance be in writing, and be acknowledged and recorded in the same manner as chattel mortgages are required to be acknowledged and recorded by the laws of this State, in cases where the possession of the property is to remain with mortgagor." It may be suggested that by the terms of this statute a married woman may obtain property from her husband by gift, and that the evidence would justify the inference that the husband meant to renounce all rights to the money or property which appellee held and to make a gift of the same to her. It may be that in equity the husband and his representatives would be estopped from claiming the property because of the manner in which it was treated by him, but at law, in a case in which appellee must recover upon the strength of her legal title, it is very clear that a gift or transfer of personal property from the husband to the wife could not be established unless the terms of the above statute were shown to have been complied with. A valid transfer of the husband's goods to the wife must be in writing, and acknowledged and recorded, as required by law. It is not

pretended that this was done, nor indeed is it claimed that she held the property by gift from her husband. Contention is that the property never belonged to the husband, because he never reduced it into his possession. The rule with reference to reducing the personal property of the wife to possession has application only to the wife's choses in action. We have already seen that as to money and chattels, being choses in possession, the title to them vests in the husband absolutely under the common law, and that the wife's possession becomes his possession.

The furniture in question in this suit was in the house in which appellee resided with her husband. He is still regarded as the head of the family, and the household furniture in possession of the family is presumed to be his until the contrary is shown. The Act of 1874 was not designed, any more than the Act of 1861, to overcome this presumption of the common law, nor was it " designed to take from husbands rights which had vested in them prior to its passage, or to take from them such as had been acquired in another State subsequent to its passage." Dubois v. Jackson, *supra;* Reeves v. Webster, 71 Ill. 307.

Appellee asserted that the legal title to the furniture was in her; that she bought and paid for it with her own money, and the *onus* was on her to prove it. Starting with the presumption that the furniture belonged to her husband, what has she shown to rebut the presumption? She has shown that she received money from her parents and brought it with her to this State before the Act of 1861. That goes for nothing; for as the law then was it became her husband's as soon as it was given to her, or as soon as she came with her husband to reside in this State. Walker v. Reamy, 36 Pa. St. 416. She further showed that, while living with her husband in this State, money was paid to her by her brother for services rendered between 1861 and 1866. That, too, became the money of her husband as the law then stood, and his ownership of it was not divested by any subsequent statute. She finally showed that she retained all the money in her possession and went with her husband to the State of Wisconsin and increased

the amount of it by profitable investment and brought it back with her to the State of Illinois, and with a part of it purchased this furniture. Here again, as we have seen, the presumption is that money which was in her hands in the State of Wisconsin became vested in her husband by virtue of the common law, and that it remained his upon their coming into this State, and thus the conclusion of the law on the facts in evidence is that the furniture was purchased with the money of her husband, and was his property, and was, therefore, subject to attachment at the suit of his creditors. It follows that the court erred in instructing the jury to find a verdict for appellee, and the judgment must, therefore, be reversed and the case remanded.

*Reversed and remanded.*