# THOMAS MACKIN AND JOHN MACKIN

## v.

# MARGERY BLYTHE.

*Landlord and Tenant—Distraint for Rent—Furniture—Chattel Mortgage—Trespass—Punitive Damages—Evidence—Instructions—Special Finding.*

1. The presumption is, that furniture in use in a dwelling belongs to the occupant, and a levy thereon for rent by the landlord will not render him liable for exemplary damages unless it appears that he knew that the same belonged to another. Nor would knowledge on the landlord's part that there was a chattel mortgage upon the same deprive him of the right of levying his distress or subject him to liability for punitive damages for so doing.

2. Neither will a landlord be liable for more than the actual damage, where such goods are seized by his agents with knowledge that the same have been taken possession of under a mortgage, by a third person, unless, with full knowledge of all the facts, he ratifies such action.

3. Nor will the retention of the goods by the landlord, after being informed of the claim of such third person, subject him to punitive damages, if in good faith he proposes retaining the same, to test the validity of the mortgage running to such person, and the title to the goods thereunder.

4. Where counsel has obtained the ruling of the court, that proof sought to be introduced is incompetent, and has saved his exception, he need not press the question further in order to preserve the error.

5. In an action brought for the recovery of damages for a trespass growing out of a levy upon certain household furniture for rent due from another, the plaintiff claiming to be in possession thereof under purchase at mortgage sale, this court holds that the evidence does not justify the conclusion that the landlord intentionally and knowingly kept trunks containing her apparel, levied upon at the time the household goods were taken, to wantonly oppress and harass her or to gratify his malice; that the instruction given in her behalf touching the estimation of damages was erroneous; likewise the refusal to allow defendants' counsel to ask the plaintiff upon cross-examination as to her motive in taking the mortgage in question; likewise the ruling that if there was a legal consideration for the mortgage, the intention or motive in taking it cut no figure, and that judgment for the plaintiff can not stand.

[Opinion filed January 22, 1890.]

Mackin v. Blythe.

Appeal from the Circuit Court of Cook County; the Hon. Richard S. Tuthill, Judge, presiding.

Mr. C. S. Beattie, for appellants.

Mr. George H. Kettelle, for appellee.

Moran, J. Appellant, Thomas Mackin, was the landlord of certain premises, which were rented by a written lease from him to one Thomas N. Frances, and were occupied by said Frances and wife, and the appellee, their daughter. On April 21, 1888, there being then some five months' rent, amounting to $200, due under the lease, said Thomas Mackin issued a distress warrant against the goods and chattels of Thomas N. Frances and Mrs. Thomas N. Frances, and delivered the same to Keegan to execute.

On the morning of April 25, 1888, said Keegan, accompanied by appellant John Mackin, son of Thomas Mackin, and some others, went to the premises and levied upon and carried away the household furniture found in the house, consisting of carpets, beds and bedding, chairs, dressing cases, kitchen range and furniture, and various other articles of household use. The evidence shows that from December 31, 1886, appellee had held a chattel mortgage on said household furniture, executed to her by her father and mother, said Thomas N. Frances and his wife, and that from the time of giving said mortgage up to April 20, 1888, the furniture had been used as the furniture of said rented premises by said Frances and wife, and appellee had lived with them as a boarder. On April 20th the appellee placed a custodian in the house, under her mortgage, and notices were posted of a sale of the property under the mortgage, and the sale was made, or was just in process of being made, at the time Keegan and Mackin and the others entered the house and took the furniture under the distress warrant. Appellee claims to have bought in the property for the amount due on the mortgage. At the time the distress warrant was levied and the property taken, appellee notified Keegan and John Mackin that it was her property, but

they proceeded to take it out of the house, and had it removed to a warehouse and stored. Among other things taken by said Keegan and Mackin were two trunks containing wearing apparel, and which appellee at the time requested them not to take as they contained all her personal apparel, but they, with some show of rudeness, insisted on taking the trunks, offering, however, after they had them on the street, that if she would open them and show them to contain her wearing apparel, she might have them back. That she declined to do. After the goods were taken to the warehouse, a list was made out, showing what had been distrained, and filed in the justice office, together with the distress warrant. The goods were detained, though demanded by appellee, till after the rent for which the distress was levied was paid, which was done May 14th, when they were returned by Keegan to appellee, and receipted for by her. She then brought this action against Keegan and the two Mackins to recover for the trespass and the injury done to the goods, and on the trial, after the suit had been dismissed as to Keegan, the jury rendered a verdict for $1,000 damages against the two Mackins. The jury found in answer to special interrogatories that the actual damages suffered by appellee were $85.

The question is, can the verdict, so far as it consisted of punitive exemplary damages, be sustained as against the appellant, Thomas Mackin, under the evidence and instructions set forth in this record. The household furniture taken is shown to have been the furniture which was used in the house rented by Thomas N. Frances, and which he occupied with his family. Such furniture would be presumed to be his (Hanchett v. Rice, 22 Ill. App. 442), and liable to distress for rent due from him until the contrary was shown. A levy on said furniture for the rent expressly directed by Mackin would not make him liable for exemplary damages, unless it was shown that he knew that the furniture did not belong to said Frances, but was the property of appellee, nor would the knowledge on Mackin's part that there was a chattel mortgage on the furniture deprive him of the right of levying his distress thereon, or subject him to liability for punitive dam-

Mackin v. Blythe.

ages for so levying. Now, there is no evidence in the case tending to show that Keegan or John Mackin had any other authority from Thomas Mackin than that given in the distress warrant, to wit, to levy for the rent on the goods and chattels of Thomas N. and Mrs. Thomas N. Frances. There is no evidence in the record that Thomas Mackin knew at the time he directed the levy of the distress warrant that appellee had taken possession of the goods under her mortgage; therefore, if Keegan and John Mackin wrongfully seized the goods, knowing that she had taken such possession, or had purchased in the goods under a mortgage sale, Thomas Mackin would be liable only for the actual damages caused by such seizure, unless with full knowledge he ratified the same; nor do we think that his refusal to deliver the household goods up to her after he knew she claimed them as hers under the mortgage sale should subject him to punitive damages, if in good faith he proposed, by retaining the said goods, to test the validity of her mortgage, and of her title to the goods thereunder. It appears from the record that he questioned the *bona fides* of her mortgage (a matter which we shall have occasion to discuss later on), and levying upon the goods was one mode by which that question could be tested, and under the circumstances, about the only mode open to him; and if he was guilty of no bad faith he could, even if mistaken, be held for no more than the actual damages resulting from taking and detaining the goods. Miller et al. v. Kirby, 74 Ill. 242.

It is strenuously argued, however, by counsel for appellee, that Keegan and John Mackin were guilty of a wanton and wilful disregard of appellee's rights, and reckless and oppressive conduct toward her in taking her trunks containing her wearing apparel, which were in no way subject to the claim for rent, or to the distress warrant, and detaining them from her for some three weeks, and he suggests, and from an examination of the record we are inclined to agree with him, that it was this which the jury thought was evidence of malice, and upon which they founded the verdict rendered by them. Counsel does not claim, however, that the taking of appellee's

trunks was authorized by the distress warrant, or in any manner directed by Thomas Mackin. It is sought to make him liable on the ground that he adopted and ratified the act. It is said that Thomas Mackin refused to deliver the goods upon demand, but retained all of them as subject to his claim for rent, and thereby reaped the fruits of John Mackin and Keegan's wrongful and malicious act in seizing the trunks of clothing. In order to make Thomas Mackin liable for punitive damages, on this theory, it is indispensable that he shall be shown to have knowledge that the trunks containing appellee's wearing apparel had been taken with the other goods, and that he retained them with such knowledge. We have searched this record in vain for evidence which shows that Thomas Mackin was ever informed by any person that trunks containing appellee's wearing apparel were taken and stored with the other goods. We do not find a syllable of evidence that would put him on notice of the fact. Counsel states that Thomas Mackin instructed Keegan to hold, not only the furniture, but the private trunks of Mrs. Blythe till the rent was paid, but has referred us to no place in the record where such evidence is found. Everywhere in the record where any information is shown to have been given to Thomas Mackin, " the goods," or " the furniture " is what is spoken of, but there is nowhere, so far as we have been able to discover, any mention to him, or by him, of trunks or of wearing apparel.

Indeed, it is rather noticeable that counsel, in seeking to bring home knowledge to Thomas Mackin of what had been done, confines himself to questions about the " goods," and makes no distinct reference to the trunks or the wearing apparel. After asking the witness Keegan, if appellee did not demand the " goods " of him, he asks him if he reported that to Thomas Mackin and on the witness answering that he may have done so, not positive, the next question is: " And afterward, when you took an indemnifying bond, you did tell him everything?" Ans. " Yes, sir."

It is on this last question and answer that reliance is placed as showing that Thomas Mackin ratified the taking of the

trunks and clothing.   It is, to say the least, very ambiguous evidence of ratification, and too meager, uncertain and indefinite to support the conclusion that Thomas Mackin intentionally and knowingly kept appellee's apparel from her to gratify his malice, or to wantonly oppress and harass her.

But, however it may be with the question of fact, the verdict can not stand as to this element of vindictive damages, because of the misleading character of the plaintiff's instruction. · It will be seen from what has already been said, that Thomas Mackin could have been found guilty under the facts in evidence, and still be liable for actual damages only; that is to say, if by levying on the furniture, knowing of appellee's claim for ownership, or by retaining it with knowledge of such claim after it had been seized, he meant in good faith to test her title to it, then, even if mistaken and found guilty of trespass, he would be liable to appellee for compensatory damages only, and such also would be the limit of the damage, if, in issuing the warrant, he intended only to levy on the goods of Frances, and his agents knowingly levied on the goods of appellee.

The defendant John Mackin, on the other hand, who was clearly shown to have been present at the taking of the goods and to have participated in any acts of an aggravating character which took place, and who directed the taking of appellee's trunks after he was informed that they were no part of the household furniture of Frances, but contained the individual wearing apparel of appellee, would be liable to punitive damages if the jury believed that the manner of the taking or the circumstance of seizing appellee's clothing evidenced malice on his part, or a wanton and reckless disregard of appellee's rights.   The two defendants might be found guilty— should in fact be found guilty—if appellee's mortgage was for value and *bona fide*, but Thomas Mackin could not be punished for John's or Keegan's violence of manner or reckless or wanton conduct, unless, with full knowledge of all the facts, he adopted or ratified their acts, and availed himself of the benefit or advantage which such acts gained for him.   Such being the conditions, the following instruction was given at appellee's request:

" 13.   If from the evidence, under the instructions of the court, the jury find the defendants guilty, as charged in the declaration, then, if the jury further find from the evidence that the taking of the property was done under such circumstances, or in such manner, as evidenced a disposition on the part of defendants to maliciously and wantonly possess themselves of such property, regardless of the plaintiff's rights thereto, then the jury are not confined in their estimate of damages to the actual damage shown by the evidence to have been done to the property taken, but they may assess in addition thereto such punitive or exemplary damages, as to the jury shall seem just and proper in view of all the evidence in the case."

This instruction in no way distinguishes between the proof necessary to authorize punitive damages against Thomas Mackin, and that which warrants such damages against John. It contains no hypothesis that Thomas had authorized or approved of the circumstances or conduct shown by the evidence, which would justify the assessment of such damages in the case.   The jury might well infer, and no doubt did understand, from the instruction, that the wilful taking of appellee's apparel by John Mackin and Keegan, taken in connection with the fact that it was retained with the other goods seized till the rent was paid, was enough to establish a disposition on the part of both defendants to maliciously and wantonly possess themselves of appellee's property, without regard to the question whether Thomas Mackin knew the clothes had been taken or were being detained.   Thus Thomas is made liable for his co-defendants' wrongful conduct, without having authorized it, or knowingly approved of it.   The misleading tendency of this instruction is cured by no other instruction given in the case.   The jury were nowhere told that they must find that Thomas Mackin knew of the taking and detaining of appellee's trunks, and approved of it, or that he authorized or approved of other conduct of Keegan and John Mackin which showed wantonness or recklessness, and authorized exemplary damages, before they could assess such damages against him.   See Partridge v. Brady, 7 Ill. App. 639; Arasmith v. Temple, 11 Ill. App. 39.

We think there was error also in the court's refusing to allow appellant's counsel to ask appellee on cross-examination what her motive was in taking the chattel mortgage from her parents. The subject was one for legitimate cross-examination when the question was asked, as appellee had stated her purchase of the goods under the mortgage sale on the direct.

The court's ruling that if there was a legal consideration for the mortgage, it made no difference what the intention or motive was in taking it, was an erroneous statement of the law, and it is not defended by counsel for appellee. It is argued, however, that there was no error, as the court told counsel when he stated his offer of proof to "ask his question," and counsel did not ask the witness further. We think it plainly apparent from the context that the court in so stating did not intend to rule that questions on that subject were admissible, but to indicate to counsel that he preferred to rule on questions than on offers of proof. Neither does the suggestion that counsel for appellant had other opportunities on the trial for going into the motive of appellee in taking the mortgage, which he did not avail himself of, meet the objection. Counsel having obtained the ruling of the court that such proof as he sought to introduce was incompetent, and having saved his exception, was not bound to press the question further in order to preserve the error. He was at liberty to rest on that exception. Anglo-American Packing Co. v. Baier, 20 Ill. App. 376.

The judgment of the Circuit Court will be reversed for the error indicated and the case remanded for a new trial.

*Reversed and remanded.*