# WALDEMAR T. HANSEN
## V.
# CHARLES J. MILLER.

*Real Estate—Breach of Contract to Convey—Damages—Recovery of.*

1. It is only substantial errors that call for a reversal of a case.

2. After a dissolution of a partnership, either partner may receive a debt due the firm, notwithstanding an agreement between the partners, of which a debtor has notice, that one of their number, or a third person, shall alone collect and pay the debts.

3. Such rule does not apply where ordinary partnership effects have been assigned so as to vest the legal or equitable interest of the partnership in the assignee, the debtor having notice thereof.

4. This court will not reverse a case upon the ground that the judgment of the trial court was in excess of the damages proved, its attention not having been called thereto on the motion for a new trial.

5. Although a person has a right to part with his interest in lands, where he has entered into a contract as to a portion of them, covenanting to convey upon certain payments, he can not, by parting with his interest, rid himself of his duty to so receive payments and convey without the consent of the purchaser. Notice to the latter and his consent is necessary, in order to make it his duty to pay another and to look to him for a conveyance. In the case presented, this court holds that statements to a person authorized only to make a payment for the purchaser, could not be considered notice to the plaintiff.

6. The fact that an objection was sustained to a question asked the plaintiff, on the ground that it was not proper cross-examination, does not preclude the defendant from offering to prove the same thing sought by the excluded question, when he comes to put in his defense.

7. In an action for damages for a breach of contract, it is no defense that the plaintiff may be liable in another action to some one else.

8. Where, by the covenants of a given contract, parties bind themselves to give a warranty deed to a third party, the latter is entitled to their personal covenants as a security.

[Opinion filed June 20, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding.

Messrs. G. W. & J. T. KRETZINGER and F. L. BROOKS, for appellant.

Hansen v. Miller.

The contract sued upon, as set out in the declaration, clearly shows that it was an executory one, and the evidence fails in any particular to prove that the same was ever completed or became executed, or had been rescinded, and therefore if any recovery whatever could be had, it must be upon the contract as a continuing one, and appellee can only recover, if at all, for a breach of the same, under the special count. Chitty on Pleadings, Vol. 1, p. 355; East v. Roff, Adm'r, 26 Ill. 452; Phelps v. Hubbard, 59 Ill. 79.

The contract in substance binds appellee to pay all the installments as the same become due, according to the tenor of certain notes given by him therefor, and on the payment of the last of which he was to receive a warranty deed. The allegations in the special count are to the effect that appellee made all such payments according to the contract, and that the defendants refused, and still refuse to make a conveyance of the land contracted for. It is admitted that the last payment has never been received by any one, but appellee contends that by virtue of his appearing at the office of appellant, and there offering to pay the same to some person in such office, he made a legal tender of such last installment, and thereby completed the contract on his part. No testimony whatever appears in the record, or was adduced by appellee to show that he, or any one on his behalf, at this or any other time or place, ever mentioned or demanded any deed, which, by the terms of the contract, he became entitled to immediately upon the payment of said last installment, or that appellant, or any of the other defendants, at any time ever refused to give him a deed according to the terms of said contract upon the payment of said last installment.

There appears nowhere in the testimony any proof showing or tending to show any breach of the contract on the part of appellant or any of the other defendants, or their assignee, and therefore we submit, that the failure of appellee to so prove such fact is fatal to his recovery upon the special count in this action. Kelderhouse v. Saveland, 1 Ill. App. 65.

By way of conclusion upon this point, we respectfully

submit that appellee can not recover under the pleadings and testimony in this case, and we therefore leave this subject after referring to the very brief, but appropriate, decision of Justice Breese, in the case of Doggett et al. v. Brown, 28 Ill. 495, wherein the law is stated to be, in a case similar to the one at bar, as follows :

"It is clear the appellee was not in a position to rescind the contract on his part, and bring his action for the work and labor done under it. He should have demanded a deed for the lot of ground; *non constat*, but the appellants would have made him a deed for the work he had done. Had they failed to give him work and refused to give a deed on demand made, the appellee could have rescinded the contract, and recovered for the work done. In Selby v. Hutchison, 4 Gilm. 333, this court held that 'in order to justify an abandonment of a contract, and of the proper remedy growing out of it, the failure of the opposite party must be a total one; the object of the contract must have been defeated, or rendered unattainable by his misconduct or default.' The object of this contract so far as the appellee was concerned, was a deed for the lot. The object can not be said to be defeated until a demand is made of a deed, and refusal to execute it. The object is not shown to have been unattainable, no deed having been demanded."

In view of the uncontradicted evidence as to the fact that appellee knew who owned the contract and notes, and to whom he could send the remaining installments and thereby get his notes, on the payment of the last of which he would get his deed, and in view of the further fact, that after being told by Hansen, as he admits, that the firm had nothing more to do with the matter, and that he never again approached or saw Hansen in relation to the same, it seems to us conclusive that he utterly ignored the notice that was given him, or negligently intrusted his money with one who had no apparent or real authority to collect or receive the same, and the loss, if any, should fall upon his own shoulders and be charged to his own negligence and want of ordinary business judgment.

All of the payments made by appellee to Fredericksen, after having knowledge of the fact that the contract and notes were held by the bank, we respectfully submit should not in any event have been included in the judgment in this case. Appellee's own testimony in reference to these payments is to the effect that after the third one, which was sent to the bank, the later installments, except the last, were paid by him to Fredericksen. The testimony is silent as to whether he made any demand upon Fredericksen for the notes which this money was to pay and take up; but in his testimony in this particular, he states that he got no notes, but only took Fredericksen's receipts. This fact alone shows conclusively that Fredericksen had no authority to receive payments for the bank, and the law is that where a debtor makes payment to an agent, the burden of proof is upon him to show that the notes were in the agent's possession when payment was made. This he has failed to do, and the presumption clearly is that they were not, otherwise the appellee would have demanded and received the same on the payment of his money.

For a full discussion of the law applicable to these last mentioned facts, we refer this court to the case of Stiger v. Bent, 111 Ill. 338, and the authorities therein cited.

Notwithstanding the undisputed fact, as appears by the testimony, that all of the notes given by appellee, with the exception of the first and second, which were paid prior to the dissolution, and the third, which, at the request of appellee, was sent to the bank, and by it turned over to appellee, all the remaining notes are still in possession of some one other than appellee, the maker, and presumably unpaid and outstanding; and that appellant should be entitled to recover all his money back from appellee, with the acknowledged fact that the notes which he has promised to pay, and which have been assigned by appellant, and who at any time may be compelled to again pay the same to the assignee by virtue of his indorsement thereon, seems to us unjust.

In this connection the language used in the opinion of Justice Scott in the case of Martin v. Chambers, 84 Ill. 579, is very applicable:

" The law undoubtedly is, the action for assumpsit for money had and received is an equitable action, and lies where defendant has in his possession money belonging to plaintiff, which, in conscience, he ought not to retain; still, this view of the law does not aid plaintiff's case. According to his own testimony, one note given for the consideration to be paid for this land is outstanding and has never been paid. It is true it has been assigned, yet it does not appear but defendant may have to take it up from his assignee. It is not shown that defendant has any money in his hands that equitably belongs to plaintiff."

Further, and by way of conclusion on this point, we submit that any payments made by appellee toward the performance of this contract, after having had notice, either express or implied, that the vendors no longer owned or controlled the same—and after paying one installment to the assignee of said contract with such notice—any payments thereafter made by appellee to any one other than the Merchants Exchange Bank, or its authorized agent, would be a voluntary payment on the part of appellee, and the same could not be recovered back by him in this action; and inasmuch as no fraud or duress is shown to have been practiced upon appellee by either Hansen or any one else, it is clear that any payments so voluntarily made to Fredericksen could not be recovered back from him, much less from appellant, against whom judgment for these amounts was recovered in this action.

" The law is settled that money voluntarily paid with full knowledge of the facts can not be recovered back for money had and received. It is not sufficient that such payments be made only in ignorance of the party's legal rights." City of Chicago v. Fidelity Bank, 11 Ill. App. 172; Elston v. City of Chicago, 40 Ill. 514; County of La Salle v. Simmins, 5 Gilm. 13.

Messrs. THORNTON & CHANCELLOR, for appellee.

Appellant objects that this action can not be maintained under the common counts, because the contract is executory.

The contract, in the first place, has been executed upon the part of appellee, he having done everything required of him thereunder. Brand v. Henderson, 107 Ill. 141. Again, the assignment to the bank made it impossible for appellant to fulfill his part of the contract, thus giving appellee the right to sue under the common count for money had and received to his use by appellant. Chitty on Pl., Vol. 1, p. 354; Luey v. Bundy, 9 N. Hamp. 298; 2 Burr, 1010; 12 Johns. 363; see also Village of Morgan Park v. Gahan, 35 Ill. App. 646; Hurd v. Denny, 16 Ill. 492; Anson on Cont., 283, Sec. 2.

The action was maintainable under the special count also, the variance between the allegation of payment therein and the proof of tender being immaterial, (Wheeler v. Reed, 36 Ill. 85, Stephens on Pl., 107 and 108,) and it not being necessary to make a demand for an impossible performance. Delamater v. Miller, 1 Cow. 75; Bassett v. Bassett, 55 Me. 127; Smith v. Jordan, 13 Minn. 264.

Appellant next seeks to charge appellee with knowledge of the assignment of his contract by the alleged notice to his agent, Shogren. Knowledge does not imply consent. The record does not show that Shogren ever ratified the assignment. Moreover he had no authority to act for appellee further than to pay the money to appellant, nor had he the appearance of more authority. The agent can not bind his principal by acts beyond the authority of the former or the appearance of authority, for which the principal is responsible. 1 Parsons on Cont., Chap. 3, p. 44. Appellee's payments to Fredericksen were made under the direction of appellant, and therefore were binding upon appellant.

Further, appellant alleges that no legal tender was made of the amount due upon the last payment under the contract. Appellee was at the place of payment upon the day provided in the contract therefor, with the necessary amount of actual, lawful money in readiness to make such payment. He called on both Fredericksen and Hansen; Fredericksen had left the city, and his whereabouts were unknown. Appellee waited at appellant's usual place of business for an hour during the time of day allotted to the

transaction of business, and while appellant was really in his private room connected with his main office, evidently hiding himself from appellee, and then offered the visible money to appellant's clerk, who refused it. He thus discharged every duty and fulfilled every requirement devolving upon him in the premises, and his tender was valid. 2 Parsons on Cont., Part 2, Chap. 3, Sec. 3, p. 676.

SHEPARD, J. The appellant was, in 1883, a member of the copartnership firm of Fredericksen, Hansen & Drummond, who were dealers in Minnesota lands, and having an office and transacting business in Chicago.

Appellee was a resident of Chicago, and bought some lands of said firm by virtue of a contract in writing, as follows: " This agreement, made this 31st day of October, 1883, between Fredericksen, Hansen & Drummond, of Chicago, Ill., of the first part, and Charles Miller, of Chicago, county of Cook, State of Illinois, of the second part, witnesseth, that in consideration of the stipulation herein contained, and the payments to be made as hereinafter specified, the first party hereby agrees to sell unto the second party the east half, southwest quarter of section No. twenty-three (23), in township No. one hundred and one (101) north, of range No. twenty-nine (29), west of 5th P. M., being in Martin County, State of Minnesota, containing, according to the United States Bureau, eighty acres, be the same more or less, at the rate of seven dollars ($7) per acre, computed to be five hundred and sixty dollars, on which the second party hath paid the sum of one hundred and eight and 80-100 dollars, being eighty dollars principal and one year's interest in advance at six (6) per cent per annum on the balance. And the second party, in consideration of the premises, hereby agrees to pay the said first party the following sums in principal and interest at the several times named below:

|            | Day. | Month. | Year. | Principal. | Interest. | Amount. |
|------------|------|--------|-------|------------|-----------|---------|
| 1st pymt.  | 31st | Oct.   | 1884  | 80.00      | 24        | 104.00  |
| 2nd "      | 31st | Oct.   | 1885  | 80.00      | 19.20     | 99.20   |
| 3rd "      | 31st | Oct.   | 1886  | 80.00      | 14.40     | 94.40   |

Hansen v. Miller.

|  | Day. | Month. | Year. | Principal. | Interest. | Amount. |
|---|---|---|---|---|---|---|
| 4th pymt. | 31st | Oct. | 1887 | 80.00 | 9.60 | 89.60 |
| 5th " | 31st | Oct. | 1888 | 80.00 | 4.80 | 84.80 |
| 6th " | 31st | Oct. | 1889 | 80.00 |  | 80.00 |

"Fredericksen, Hansen & Drummond also agree to accept at any time from the purchaser any or all of above named sums, and to charge interest only for time actually expired; and when the above named payments are made by the said second party, for which sum he has given his promissory note bearing even date herewith, payable on the dates named above, at the office of Fredericksen, Hansen & Drummond, the said party of the first part will then make unto the said second party a warranty deed on the above described land, and the said second party hereto agrees and binds himself, his heirs and assigns, to assume and make the payments stipulated to be made in the contract.

"And it being mutually understood that the above premises are sold to said second party for improvement and cultivation, the said second party hereby further agrees and obligates himself, his heirs and assigns, that all improvements placed upon said premises shall remain thereto, and shall not be removed or destroyed until final payment for said land; and further that he will punctually pay said sums of money above specified, as each of the same become due, and that he will regularly and seasonably pay all such taxes and assessments as may be lawfully imposed upon said premises.

"It is also agreed that should the party of the second part fail to make any of the payments named above, and at the times stipulated, the payments already made shall be forfeited to the said party of the first part, and this contract shall be null and void.

"In witness of which the said parties hereto have caused these presents, in duplicate, to be executed on the day and year first above written.

                    Fredericksen, Hansen & Drummond,
                                        grantor,
          Charles Miller, purchaser.
    Witness:   F. M. Fredericksen, Oscar Guyer."

Appellant testified that the signature of the firm name to the contract retained by appellee, was his.

On the contract price of $560 there was paid at the time the contract was entered into the sum of $80, on account of the principal sum, and $28.80 for one year's interest in advance, at six per cent, on the remaining $480, which was divided into six deferred annual payments of $80 each and interest in advance on what remained. These postponed or deferred payments are the ones specified in the contract as first, second, third, fourth, fifth and sixth payments.

We think it fairly deducible from the evidence that appellee gave a promissory note to Fredericksen, Hansen & Drummond for the amount of each installment of $80, with interest on the whole up to the date of maturity of the installments respectively, and that those notes are what is called in the contract " his promissory note   *   *   *   payable on the dates named above."

It appears from the evidence that the firm of Fredericksen, Hansen & Drummond was dissolved some time in July, 1884, and that the appellant, Hansen, removed his office to a different and separate location from that of his former partners. Before the firm dissolved, Miller paid to the appellant, Hansen, for the firm, the note for $104, representing the installment due October 31, 1884, in advance of its maturity, but neither the exact date of payment, nor whether the note was ever surrendered to Miller or not, appears.

On July 22, 1884, Miller, through one Charles Shogren, paid to Hansen the note for $99.20, representing the installment due October 31, 1885, and the only evidence of the surrender of that note to Miller lies in the following letter:

" W.  T. HANSEN,
late of
Frederickson, Hansen & Drummond,
Western Lands,
26 North Clark Street.

CHICAGO, ILL., July 24, 1884.
CHARLES SHOGREN, 4104 Shurtleff Ave., City.

*Dear Sir:*—Enclosed please find note of Charles Miller for $99.20, which you have paid for some days ago.

Yours truly

W. T. Hansen,

pp. G. G. Groeyer.

Enclosed, note $99.20."

The testimony of appellant concerning what occurred at the time the payment last referred to was made through Shogren, was as follows:

" On the 22d day of July, 1884, Mr. Miller, or somebody representing him, came to my office to pay a note that was due under this contract; I told him that I did not have the note and had nothing to do with it; that it was with the Merchants Exchange Bank in Milwaukee, and that if he wanted me to I would send the money for him up to Milwaukee and get the note; he then paid the money to me; I sent it up to Milwaukee the same day and got the note back the next day and returned it. I told him that all the contracts issued by Fredericksen, Hansen & Drummond had been transferred to the Merchants Exchange Bank in Milwaukee, in trust for the purchasers, and that when they paid their money to the bank they would get their deed; that I had nothing to do with it, but I would send the money up for them if they wanted me to, and get the notes and return them to them; I did not tell him in that conversation to go to Fredericksen and pay this money, because Fredricksen had nothing to do with it; he knew that the firm of Fredricksen, Hansen & Drummond was dissolved, * * * as all the purchasers were notified by mail, at the time of the dissolution." It clearly appears elsewhere, that the statements just recited were made to Shogren and not to Miller. Miller was not present, but had sent the money by Shogren. The next three payments were made to Fredericksen, the former partner of appellant in the firm of Fredericksen, Hansen & Drummond.

Appellee testified that he made those payments to Fredericksen because Hansen, appellant, told him after he had paid the first two notes, that he did not have anything

more to do with it, and "to go over to Mr. Fredericksen
and pay him." When the last payment became due,
appellee went again to Fredericksen's office, but Frederick-
sen being absent, and because of having heard that there
was something wrong about Fredericksen's affairs, he
refused to leave the money with Fredericksen's son, and
went again to the office of Hansen, the appellant. Fred-
ericksen, it seems, had in fact absconded before that time.
The clerk in charge of appellant's office refused to permit
appellee to go into the room where appellant was, and
refused to accept from him for appellant the money for the
last payment. After staying in appellant's office for about
an hour, and being unable to speak to appellant, or have
what he calls a tender of the last payment accepted by the
clerk to whom he offered it, the appellee went away and
subsequently brought this suit without any further attempt
to pay.

In addition to the payments indicated, the appellee paid
taxes on the land for the years 1883 to 1887, inclusive,
aggregating the sum of $40.43, and introduced in evidence
receipts of the proper county treasurer for the same. Ap-
pellee's testimony, which stands uncontradicted on that
point, is that he paid the taxes through appellant for a
time, and afterward through Fredericksen, or in other
words, as the witness testified, they collected the taxes from
him and procured the tax receipts for him.

It is apparent from the testimony of appellant that at or
about the time of the dissolution of the firm of Frederick-
sen, Hansen & Drummond, the contract in question was
transferred to the Merchants Exchange Bank in Milwaukee,
but upon what terms or conditions the transfer was made,
is not susceptible of certain determination from the evidence
in the case.

Appellant testified that the firm of Fredericksen, Hansen
& Drummond held its claim to the land under a contract of
purchase from a Scottish company, and that "this contract,
together with the duplicate contract to Miller, was turned
over to the Merchants Exchange Bank when the firm of

Fredericksen, Hansen & Drummond dissolved;" that the bank paid the Scottish company the balance due upon the original contract of purchase and "took out a deed in the name of the cashier of the bank, who has held that deed since 1887, and has at any time been able to furnish Mr. Miller his deed whenever he should pay the money." This is the only positive evidence in the case as to the circumstances under which the contract in question was transferred to the bank. All the other evidence in the case on that point is included in what appellant said he told Shogren, but he does not testify that what he told Shogren was the fact. It may be said, therefore, to be mere conjecture whether the contract had been absolutely sold and assigned, or deposited as collateral security, or transferred in trust for some purpose, to the bank. Whether the bank looked to the appellee primarily, or held his contract and notes merely as collateral security to an obligation of Fredericksen, Hansen & Drummond, or in trust for some purpose, nowhere appears, unless the statement of appellant that the bank notified him that the payments were due from Miller, casts light upon the question.

If the relationship of the bank to the papers in question were such as to impose any new duty upon appellee, it should have been made, by appellant, so to appear. The question of what the exact attitude of the bank may have been in the transaction is important as aiding to elucidate the duty of the appellee in the matter of to whom he was bound to make payments or tender thereof before he could sustain an action for damages, or to recover back moneys paid by him on the contract.

Appellee's declaration consisted of a special count for damages for breach of the contract to convey, and the common counts. The objection of appellant that the contract had not been performed by appellee by making the payments required of him, and that he made no demand for a deed at the time he offered in appellant's office to make the last payment, we do not regard as well founded. By the terms of the contract between the parties, the appellee

bound himself to make the payments specified to Frederaicksen, Hansen & Drummond, at their office, and the latter agreed upon such payments being made to make to appellee a warranty deed of the land.   It is clear from the evidence that all the payments provided for by the contract, except the last one, due October 31, 1889, were actually made, either to the firm of Fredericksen, Hansen & Drummond, before its dissolution, or to the appellant, Hansen, and Fredericksen, former partners in that firm, after dissolution.

"The rule seems to be well settled by the authorities, that after a dissolution of a partnership, either partner may receive a debt due the firm, notwithstanding an agreement between the partners, of which the debtor has notice, that one of their number or a third person shall alone collect and pay the debts." Gordon v. Freeman, 11 Ill. 14, and cases cited.

While, under the authority of the case just cited, the rule there laid down would not apply where ordinary partnership effects had been assigned so as to vest the legal or equitable interest of the partnership in the assignee, of which the debtor had notice, there was not sufficient evidence in the case under consideration that appellee had notice that the contract in question had been assigned to a third person.

The only evidence tending in that direction is what was said to Shogren by appellant, as already quoted, and without evidence that it reached appellee, it was not notice to him. Shogren's authority as agent for appellee appears to have been only that of a mere messenger to carry appellee's money to appellant.   His agency appears to have been limited to the one thing of paying over the money to Hansen.

The evidence failing to show that appellee had notice of any assignment to the bank, even if any beneficial interest in the contract ever did pass by the transaction, whatever it was, appellee had the right to make payment to Fredericksen, whether he was so directed by appellant or not. And by the same right he was entitled to make a tender to appellant of the amount of the last payment.

It is unnecessary to determine whether the offer of the money that was made by appellee to the clerk of appellant in his office, fulfilled the requirements of a strict lawful tender or not. He there declared his readiness to pay, and offered to pay to the clerk the money, but was told it was of no use. He demanded to be permitted to see appellant, who was in the adjoining room, and was told by the clerk that he could not see him, and, after waiting an hour, went away.

It is shown by the testimony of appellant that he and his partners had, in some fashion, transferred the contract, under which their claim to the land existed, to the bank, and that the bank had acquired title and held the land under a deed to its cashier. Neither the appellant nor his former partners were in a position with reference to the land to accept the money, and he was not at liberty to screen himself from liability because of any technical informality in the manner of tendering the payment. For the same reason he could not insist upon the demand for a deed.

By his own statements he could not have honestly received the money and could not have given title to the land. Under such circumstances, the law does not impose the necessity of strict formalities, either of tender of payment or demand for conveyance.

By the covenants of their contract, Fredericksen, Hansen & Drummond bound themselves to give appellee their warranty deed of the land. Under that agreement the appellee was entitled to have their personal covenants as a security for the title, and he could not be compelled to give up that right. Crabtree v. Levings, 53 Ill. 526. This, it is clear, the appellant was not in a position to furnish. Although he and his partners had a right to part with their interest in the land and dispose of their contract rights as against appellee, they could not, by so doing, rid themselves of their duty to appellee without his consent. Notice to appellee of the transfer to the bank and of his consent thereto was necessary in order to have made it his duty to pay the bank, and look to it for a conveyance, and was sought to be shown by the

statements of appellant to Shogren, and by a question put to appellee on cross-examination, which was objected to and the objection sustained. As already stated, Shogren's authority was one limited to the mere act of payment, and there was no appearance of any greater authority resting in him. He could not, by an act of his, in that connection, make a different contract for appellee, nor, as already said, were the statements made to him by appellant notice to appellee.

The question, to which objection was sustained on the cross-examination of appellee, would, if answered affirmatively, have shown that appellant told appellee that the partnership had been dissolved, and that the contract in question had been turned over to Mr. Nunnemacher, of Milwaukee, and that he was the only person having authority to receive payment or to make performance. These facts, if disclosed, would have been both material and competent, under the rule that "where one party to an executory contract gives the other notice of rescission, the latter can not persist in executing his part of the contract, and charge the former with conveyances that would follow a complete execution before notice of rescission." Horr v. Slavik, 35 Ill. App. 140, and cases cited. In other other words, appellee could not have gone on making wrongful payments after notice to him of facts, which, in law, would have amounted to a rescission, and thereby have increased the damages against appellant. It would then have become his duty to have made the damages as light as possible.

But this assigned error occurred on the cross-examination of appellee, who was the first witness called on the trial, and one of the objections to the question was, that it was not cross-examination.

Later on the appellant took the stand as a witness on his own behalf, and although he was the same person referred to in the excluded question, as having made the assumed statements to appellee, no question was asked him concerning any such statements, and he did not testify to any such conversation. Sustaining the objection on the ground that

the question was not cross-examination, did not preclude the appellant from offering to prove the same thing sought by the excluded question, when he came to put in his defense. The rule that where an adverse ruling has once been obtained and exception taken, other offers governed by such ruling need not be made, (1 Thompson on Trials, Sec. 686, Mackin v. Blythe, 35 Ill. App. 216,) has no application to such a case. We must, therefore, assume that the error in sustaining the objection to the question, was a mere error in theory, and not one in substance. It is only substantial errors that call for a reversal of the case.

We may further say from a thorough examination of all the testimony of both appellant and appellee, we are convinced the error in no way harmed the appellant. It becomes well nigh apparent that no such statements were ever made by appellant to appellee, when in addition to the direct evidence we take into account the improbability that appellee would have gone on and made payments to Fredericksen after notice of a transfer to a third party.

The question as to whether appellee, having paid the third, fourth and fifth installments to Fredericksen without taking up his notes, is liable on the notes representing those installments which may be outstanding, is an entirely different one from that presented in this case. This action is for damages for a breach of contract, and it is no defense to appellant that appellee may be liable in another action to some one else.

Whether at the time appellee went to the office of appellant to pay the third deferred installment, the latter told the former to make payments to Fredericksen, can not be said to be clearly established. Appellee testifies positively on cross-examination: "He (Hansen) told me that he did not have anything to do with it. He told me to go over to Mr. Fredericksen and pay him, * * * so I went over there and paid three more notes to Mr. Fredericksen." The only positive evidence opposed to this testimony is that of the appellant, who in answer to the question put by his counsel, " Did you in that conversation tell him to go Fredericksen

and pay this money?" answered, "Why no; Fredericksen had nothing to do with it, and I could not have told him so."

But it appears most plainly that the conversation referred to in the question was that had by appellant with Shogren at the time he paid, for appellee, the second deferred installment. But, in any event, the case was tried by the court without a jury, and no proposition of law was submitted to him. He saw and heard the witnesses, and in so far as there was any conflict in the evidence on that point or any other, it was his province to reconcile it and decide upon it, and we are unable to see but that he decided according to the fair weight of the evidence. The finding and judgment of the court below was for $686.71. That sum seems to be $40 in excess of the damages proved by appellee. No mention, however, of such excess, is made by counsel in brief or argument. But if there were, we could not reverse on that ground, the attention of the court below not having been called to it on the motion for a new trial. Memory v. Niepert, 33 Ill. App. 131; Oberman Brewing Co. v. Ohlerking, 33 Ill. App. 26, and cases cited.

The judgment of the Superior Court will be affirmed.

*Judgment affirmed.*

WATERMAN, J., dissents.